UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARRINGTON GARDENS ASSOCIATES, I,
A VIRGINIA LIMITED PARTNERSHIP,
*Plaintiff-Appellant,*

v.                                            No. 97-2579

HENRY G. CISNEROS, SECRETARY OF
HOUSING AND URBAN DEVELOPMENT,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-96-987-2)

Argued: January 28, 1999

Decided: January 17, 2001

Before WIDENER and MURNAGHAN,* Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Gregory Lane Sandler, EPSTEIN & SANDLER, P.C.,

_____

*Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Norfolk, Virginia, for Appellant. George Maralan Kelley, III, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Plaintiff, Carrington Gardens Associates I (Carrington), appeals the district court's ruling that defendant, Secretary of the Department of Housing and Urban Development (HUD), was entitled to permanently retain subsidy monies otherwise due to Carrington during time periods when Carrington was in default on the terms of a Housing Assistance Payment contract (housing contract). For the reasons stated below, we affirm the district court's decision.

Carrington is a Virginia limited partnership that owns a multi-family apartment complex in Richmond, Virginia. Carrington and HUD entered into a housing contract pursuant to the Housing Assistance Payments Program, 24 C.F.R. § 886 (1997). According to the housing contract, HUD agreed to pay Carrington a portion of the monthly rental sum due from qualified low income tenants occupying certain rental units in Carrington's complex. In exchange for the federal subsidy, Carrington agreed to maintain and operate the apartment complex in a decent, safe, and sanitary manner according to the housing quality standards "as defined by HUD."

In October 1996, HUD discontinued the monthly subsidy to Carrington stating Carrington's violation of its duty under the housing contract to maintain adequately the housing complex. Carrington then filed this suit against HUD seeking relief to compel HUD to restart the monthly payments and for monetary damages equaling the amounts withheld by HUD while Carrington was in violation of its obligations. Once Carrington made the necessary repairs to comply

with the housing contract, HUD recommenced making the payments in question but it nevertheless refused to return the payments that HUD suspended while Carrington was in default. During the trial, the parties entered into a stipulation that resolved all factual disputes necessary for the district court to make its decision. The parties agreed: (1) that the apartment units inspected by HUD had at least one housing quality standard violation; (2) that in October 1996, HUD ceased making subsidy payments to Carrington for the deficient units; (3) that as of July 31, 1997, Carrington had cured any deficiencies in the units, and HUD resumed payments; and (4) that HUD failed to pay a total of $75,000 in housing payments between October 1996 and August 1997. HUD having recommenced the payments as the conditions were corrected, with no claim by HUD for abatement, the parties also agreed to present to the court three alternative dispositions for the retained sum of $75,000. First, HUD could return the retained payments to Carrington; second, HUD could keep the retained payments; and, finally, HUD could apply the $75,000 to an outstanding mortgage obligation that Carrington owes to HUD.

The district court accepted the parties' factual stipulations and decided that HUD was entitled to retain the sum of $75,000 permanently. The court held that the housing contract language authorized HUD to retain the funds. As the parties' stipulation eliminates factual disputes upon appeal, we conduct a de novo review of the district court's legal conclusion that the housing contract authorized HUD to keep the suspended housing payments. See *Nehi Bottling Co., Inc. v. All-American Bottling Corp.*, 8 F.3d 157, 162 (4th Cir. 1993). We hold that HUD properly exercised its authority to permanently retain the funds that HUD discontinued while Carrington was in violation of the housing contract.

The applicable regulations that govern the housing contract and payments state:

> (a) *Maintenance and operation:* The owner shall maintain and operate the project so as to provide Decent, Safe, and Sanitary housing and he shall provide all the services, maintenance and utilities which he agrees to provide under the [Housing] Contract, subject to abatement of housing assis-

tance payments or other applicable remedies if he fails to meet these obligations.

* * *

(d) *Units not Decent, Safe, and Sanitary.* If HUD notifies the Owner that he has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, HUD may exercise any of its rights or remedies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit.

24 C.F.R. § 886.123. The regulations clearly establish HUD's right to abate payments and to exercise "other applicable remedies" or "remedies under the [Housing] Contract" if an owner fails to satisfy its obligations.

The housing contract, which specifically incorporates HUD's regulations in section 3, establishes other remedies that HUD may exercise if an owner is in default on its obligations. Section 26 of the housing contract states that if an owner is in default, then HUD may:

(a) Pay housing assistance directly to the mortgagee in the event of default under mortgage.

(b) Reduce or suspend housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

(c) Withhold housing assistance payments until the default under this Contract has been cured to the satisfaction of HUD.

Therefore, if HUD finds that an owner has violated its obligations under the housing contract to maintain decent, safe, and sanitary housing, HUD may abate payments pursuant to 24 C.F.R. § 886.123 or exercise a remedy listed in section 26 of the housing contract. In

this connection, we note that the meaning of abate is "a: to bring entirely down; demolish: put an end to: do away with." *Webster's Third New Int'l Dictionary* 2 (1971).

Under the regulation, 24 C.F.R. § 886.123, the payments to Carrington could have been stopped for good, the contract terms aside. For construction of the contract terms, we adopt the wording of the opinion of the district court for the next three paragraphs of this opinion which follow:

> The plain meaning of the word "withhold" is "[t]o retain in one's possession that which belongs to or is claimed or sought by another. . . . To refrain from paying that which is due." *Black's Law Dictionary* 1602 (6th ed. 1990). Using this common meaning of "withhold," HUD clearly has the authority to retain housing assistance payments. But, the HAP Contract's withhold remedy also limits how long the funds may be retained. The housing assistance payments may be retained only "until the default under this Contract has been cured." Tr. Ex. 8, § 26. Once the default is cured, HUD may no longer keep the retained funds. This remedy, therefore, creates a trust type relationship where HUD has the authority to keep the withheld funds on the owner's account only while the owner is in default and thereafter must pay out the withheld funds when the default is cured.

> In contrast, the reduce-or-suspend remedy suggests a more permanent forfeiture of funds. The word "suspend" means "[t]o interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption." *Black's Law Dictionary* 1446 (6th ed. 1990). "Reduce" means "to diminish in size, amount, extent, or number." *Webster's Third New International Dictionary* 1905 (1981).[3] Based on these definitions, "reduce" is merely a less radical form of "suspend."

> Under the common meanings of "reduce" and "suspend," HUD has the authority to discontinue housing assistance payments entirely or diminish the size of the payments

while Carrington Gardens is in default. Like the withhold remedy, this remedy limits how long payments may be discontinued or diminished — only "until the default under this Contract has been cured." Tr. Ex. 8, § 26. After the default has been cured, therefore, HUD must resume full housing assistance payments. Unlike the withhold remedy, however, under the plain language of the reduce-or-suspend remedy, HUD is under no obligation to pay out any discontinued or diminished funds. The words "suspend" or "reduce" furnish no inference or suggestion that HUD is obligated to retain suspended or reduced funds on the owner's account until a default is cured. This language in the HAP Contract speaks only to HUD's obligation to begin full payments after the default is cured. JA 546-548.

---

[3] "Reduce" is not found in *Black's Law Dictionary*. Hence, the Court defaults to *Webster's*.

Thus, under the applicable regulations and the contract between the parties, the Secretary could have imposed any remedy from abatement of the payments to suspension of them for a time, with or without making up the suspended payments.

We are of opinion the action of the Secretary in suspending the payments, recommencing the payments at the time the deficiencies were corrected, and not paying the missed payments was within the applicable regulation, the meaning of the contract terms, and the discretion of the Secretary.

The judgment of the district court is accordingly

*AFFIRMED*.